UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN R. EDWARDS,<br><br>              Plaintiff,<br><br>    v.<br><br>D. CABRAL,<br><br>              Defendant. | 1:13-cv-00345 AWI-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATION:**<br><br>**1) FINDING ORIGINAL MOTION FOR SUMMARY JUDGMENT (ECF No. 54) TO BE MOOT AND SUPERSEDED BY AMENDED MOTION FOR SUMMARY JUDGMENT (ECF No. 55)**<br><br>**2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT (ECF No. 55)** |

## I.   PROCEDURAL HISTORY

Plaintiff is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action brought pursuant to 42 U.S.C. § 1983. The action proceeds against Defendants Bratton, Cabral, Escoto, and Pascual on Plaintiff's Eighth Amendment medical indifference claim. (ECF Nos. 1 & 8.) All Defendants were served and have appeared in the action. (ECF Nos. 24 & 28.)

On December 5, 2014, Defendants filed a motion for summary judgment (ECF No. 54); three days later, they filed an amended motion for summary judgment. (ECF No. 55.) Plaintiff filed an opposition (ECF No. 60) and an amended opposition (ECF No.

61) on January 22, 2015.  Defendants filed a reply that addressed both oppositions on January 30, 2015. (ECF No. 65.)

## II.     MOTION FOR SUMMARY JUDGMENT

### A. Original Motion Superseded

Defendants filed an amended motion for summary judgment (ECF No. 55) several days after filing their original motion (ECF No. 54).  The record indicates that Plaintiff was able to review both motions; he filed both an opposition (ECF No. 60) and an amended opposition (ECF No. 61) on the same day.  Therefore, the Court finds that the original motion for summary judgment is moot and superseded by the amended motion. The Court has relied on the amended filings and the reply in its decision.

### B.     Legal Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Wash. Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed R. Civ. P. 56(c)(1). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Defendants do not bear the burden of proof at trial and, in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Sec.

Litig., 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984, and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011).  However, "conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." Angle v. Miller, 673 F.3d 1122, 1134 n.6 (9th Cir. 2012) (citing Soremekun, 509 F.3d at 984).

### C. Factual Summary

The Court finds that the following facts are undisputed:

On July 17, 2012, Plaintiff was pepper sprayed following an "incident" with correctional officers. Plaintiff was suffering from glaucoma at the time. Plaintiff's chest, face, and eyes were exposed to the pepper spray. Plaintiff's eyes were open during part of the spraying. Plaintiff's also suffered an unspecified injury to his shoulder during the "incident."

Plaintiff was not immediately decontaminated following exposure to the pepper spray.  Instead, he was taken, handcuffed, to a holding cage in the program office. There was no sink in the holding cage. While Plaintiff was in the cage, Defendant Bratton, a nurse, came in to clear him for placement in administrative segregation. She knew that plaintiff had been exposed to pepper spray and had injured his shoulder. She remained in Plaintiff's presence for roughly ninety minutes. She did not physically examine Plaintiff or decontaminate him during this time.

Plaintiff was subsequently placed in Ad Seg, where he had a sink in his cell and was able to wash his face. More than two hours passed from the time he was exposed to pepper spray and when he was permitted to wash his face.

The following day, on July 18, 2012, Plaintiff asked Defendant Cabral, a Licensed Psychiatric Technician (LPT), to see a doctor because his eyes were irritated, his vision

3

was blurred, and his shoulder was in pain. Defendant Cabral did not fetch a doctor.

Later that day, Plaintiff requested medical assistance from another LPT who Plaintiff believes was Defendant Escoto. This LPT allegedly gave Plaintiff a medical call slip, which Plaintiff filled out but was unable to submit because the LPT never returned to collect it.

On July 19, 2012, Plaintiff requested medical assistance from a woman he believes was Defendant Pascual. This nurse did not summon immediate medical care but gave plaintiff another medical call slip. Plaintiff filled it out, and she collected it. However, he did not receive care immediately.

On July 24, 2012, Plaintiff began banging on his cell door and yelled "Man Down!" Officer Martinez and Defendant Pascual responded, and Plaintiff was escorted out of his cell to a doctor.

The doctor rinsed Plaintiff's eyes with saline solution and gave him a shot of Benadryl. Plaintiff subsequently received prescriptions for antibiotics and artificial tears, and was sent to an outside optometrist and ophthalmologist. The ophthalmologist, whom he saw in early August, observed that he had mild keratinitis, an inflammation of the corneas.

Plaintiff did not receive X-rays or other treatment for his shoulder.

### D.    Eighth Amendment – Medical Indifference

The Eighth Amendment entitles prisoners to medical care, and a prison official violates the Amendment when he acts with deliberate indifference to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104(1976); Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  "[A] serious medical need is present whenever the 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002)(citing McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992)); see also Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014)(a serious medical

4

need exists where inmate has an injury that a reasonable doctor would find worthy of comment or treatment or suffers chronic and substantial pain.)  Prolonged exposure to the "painful effects of pepper spray" amounts to a serious medical need. Clement, 298 F.3d at 904; Roberts v. Gonzalez, No. CV 12-2044 2013 WL 4663882, at *7 (C.D. Cal. Mar. 5, 2013); Manriquez v. Huchins, No. 1:09-CV-00456 2010 WL 2791560, at *6 (E.D. Cal. July 14, 2010).

A prison official shows deliberate indifference to such a need if he "knows of and disregards an excessive risk to inmate health." Peralta, 744 F.3d at 1082 (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994). This "requires more than ordinary lack of due care." Colwell, 763 F.3d at 1066 (citing Farmer, 511 U.S. at 835).  Instead, the prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Colwell, 763 F.3d at 1066.  Prison officials may demonstrate deliberate indifference when they "deny, delay, or intentionally interfere with medical treatment." Id.

Failure to decontaminate an inmate or his cell promptly following the use of pepper spray can constitute deliberate indifference, at least where security concerns or the Plaintiff's combative behavior do not prevent attempts at intervention. Compare Clement, 298 F.3d at 904-905 (four-hour delay in allowing pepper-sprayed inmates to shower potentially violated Eighth Amendment where altercation had abated and officers' conduct indicated they were aware that pepper spray had not dissipated); Manriquez, 2010 WL 2791560, at *6 (Plaintiff sufficiently alleged medical indifference where guards intentionally dawdled during cell extraction following use of pepper spray, then returned him to cell that had not been decontaminated); Hampton v. Ayers, 2011 WL 2565358, at *21(C.D. Cal. Jun. 2, 2011)(plaintiff sufficiently alleged Eighth Amendment violation where he was obliged to lie face down and motionless for several hours after pepper spray exposure); with Hart v. Celaya, 548 F.Supp.2d 789, 806-807 (N.D. Cal. 2008)(no Eighth Amendment violation where Plaintiff was decontaminated within minutes of exposure); Provencio v. Vasquez, No. 1:07-cv-00069 WL 2490937

(E.D. Cal. June 16, 2010), at *8-*9 (no Eighth Amendment violation where Plaintiff's aggression and noncompliance prevented efforts to decontaminate).

### E. Parties' Arguments

#### 1. Defendants' Arguments

All Defendants argue that they are entitled to summary judgment.

Defendant Bratton argues she is entitled to summary judgment because she responded adequately to Plaintiff's medical issues and his combative behavior prevented her from treating him. Specifically, she states that her visual examination allowed her to determine that Plaintiff "did not require immediate medical attention." (ECF No. 55-2, at 6.) She "concluded that he had sustained a possible shoulder dislocation, which had been spontaneously reduced back in place and that he had been exposed to oleocapsicum pepper spray." (Id.) She states that she instructed Plaintiff how to decontaminate using a fan and paper towels,[1] and that one of the correctional officers had given Plaintiff a cup of water to decontaminate, although she does not indicate that she or anyone else helped Plaintiff to decontaminate. (Id.) On her "medical report of injury or unusual occurrence" (CDCR Form 7219), she circled "yes" to all of the following questions: "O.C. Spray Exposure?"; "Decontaminated?"; "Self-decontamination instructions given?"; and "Refused decontamination?". (ECF No. 55-4, at 6). Bratton argues that even if she did not decontaminate Plaintiff, her omission did not cause Plaintiff any harm.

Defendant Cabral claims she is entitled to summary judgment because she did not consider Plaintiff's request for medical treatment to be an emergency warranting an immediate response. She alleges she did not observe any symptoms of his eye irritation, bruises, or shoulder injuries during her conversation with Plaintiff. She stated that she is trained to provide a medical request form to inmates whose injuries do not appear to require emergency treatment, and that she provided Plaintiff with such a form. (ECF No. 55-5, at 3.)

---

[1] She does not indicate, however, that she actually provided Plaintiff with either of these items, or that Plaintiff would have been able to use them with his hands cuffed behind his back. (ECF No. 55-4, at 3.)

6

Defendant Escoto claims he is entitled to summary judgment because he did not work on July 18, 2012, the day Plaintiff alleges to have interacted with him. Escoto provides a photocopy of what purports to be his work schedule during the time period in question: it indicates that he did not work on July 18, 2012, nor indeed that entire week. (ECF No. 55-6, at 5.)

Defendant Pascual does not recall having given Plaintiff a medical call slip at any time on July 19. Her "closeout sheet," a record of the patients she saw that day, does not indicate that she spoke with Plaintiff.  Even if Plaintiff is correct that she saw Plaintiff, however,  the fact that he contends she gave him and then collected the medical call slip precludes a finding of medical indifference.

### 2. Plaintiff's Arguments

Plaintiff disputes Bratton's account of her interaction with him. He claims he was not being combative or aggressive, but was in pain and was yelling "that his eyes were burning, his right shoulder was hurt, and he had glaucoma, and they beat him up (correctional officers), and [he needed] medical attention." (ECF No. 61, at 4.) In response, Bratton told him, "That's what you get for jumping on an officer," and walked away.  He denies that Bratton could have determined whether Plaintiff's shoulder had dislocated and then popped back into place, because he was handcuffed and not able to move much in the small holding cage, and asserts that "to say that Bratton…detected no significant injuries that required immediate medical attention is wrong cause she knew Edwards was exposed to pepperspray to the face." (ECF No. 61, at 6.)   He denies that Bratton gave instructions about how to decontaminate or that he received a cup of water from another correctional officer.  He points out a number of problems with Bratton's 7219 form, indicating that she wrote the wrong time, and that her "yes" answers to all questions regarding pepper spray exposure and decontamination indicate that the "7219 is incomplete or was not done in the presen[ce] of Edwards." (ECF No. 61, at 7.)

He claims that he was not able to decontaminate or wash up for approximately two hours and fifteen minutes after he was pepper sprayed. He admits that he had a sink

7

once he got to Ad Seg on the evening of July 17, but contends that he had no soap, and therefore that he was unable to get rid of the pepper spray despite washing off multiple times. He alleges that, in fact, the water reactivated the pepper spray and made the stinging and pain worse.

Plaintiff also disputes Cabral's account that she did not notice his swollen eyes or bruises, and he denies that she did give him a medical call slip. He states he did not request a slip, because he considered his situation to be an emergency.  Cabral allegedly told Plaintiff she "could not get involved," and walked away without providing assistance.

Plaintiff disputes that Escoto did not work on the day in question.  He states that Escoto's lawyer wrote him a letter stating that Escoto worked on July 17, 2012 and July 21, 2012. Plaintiff alleges that Escoto was medically indifferent when 1) he failed to recognize that Plaintiff needed urgent care and 2) he failed to collect the medical call slip he had instructed Plaintiff to fill out.

Plaintiff similarly disputes that he did not meet with Pascual on July 19.  He claims that her July 19 closeout sheet only lists the inmates she met with at the nursing station, not the inmates she saw at their cell doors. Plaintiff asserts that his eye irritation and shoulder injury amounted to a medical emergency, and that Pascual was deliberately indifferent when she offered him a medical call slip.

Plaintiff claims that he was unable to move his shoulder for more than a week after the incident and that he never received medical care for it. He claims he tried to ask medical staff about it, but that they told him they were only concerned about his eyes.

**F. Discussion**

Considering the facts in the light most favorable to Plaintiff, the Court finds that a genuine dispute of material fact exists as Bratton and Cabral's alleged deliberate indifference, but that Defendants have proven an absence of evidence to support the claims against Escoto and Pascual.

Plaintiff alleges that though he was sprayed directly in the eyes with pepper spray,

he was denied the ability to wash his face for two hours and fifteen minutes.  His eyes remained puffy and swollen and his vision blurred for several days afterward.  In addition, he felt intense pain in his shoulder and was unable to move it for at least a week. Such symptoms, if believed, would be sufficient to support a finding that Plaintiff had a serious medical need in the immediate aftermath of his exposure to the pepper spray and in the days that followed.

Defendant Bratton does not dispute that she knew Plaintiff had been pepper sprayed, or that she made no effort to decontaminate him in the ninety minutes she was in his presence.[2]  Meanwhile, Plaintiff alleges that after he explicitly told her how much pain he was in, her response was to tell him, essentially, that he deserved it.  These alleged facts, if believed by the finder of fact, sufficiently allege that Bratton was deliberately indifferent to Plaintiff's serious medical need.

The Court recognizes the conflicts in the evidence.  It is those  conflicts which render summary judgment unavailing. Bratton claims that Plaintiff "appeared to be extremely angry and agitated" and that she thought he posed a threat to her physical safety.  Where a pepper-sprayed inmate remains aggressive or noncompliant, prison staff may be justified in failing to decontaminate promptly. See Provencio, 2010 WL 2490937, at *9.  However, Plaintiff counters that he was not angry, but was yelling for help because he was in intense pain.  The trier of fact must weigh and resolve these competing claims and the reasonableness of Bratton's response to Plaintiff's yells.  Therefore, the Court will recommend denying summary judgment for Defendant Bratton.

The Court will also recommend denying summary judgment for Defendant Cabral.  The facts as alleged by Plaintiff assert he had visibly swollen eyes and bruises and told Cabral he was in intense pain.  She neither summoned emergency care nor provided Plaintiff with a medical call slip. Instead, she told Plaintiff that she could not get involved

---

[2] Giving Plaintiff instructions on self-decontamination is of no benefit to her defense absent evidence she had reason to believe Plaintiff had the ability to avail himself of her advice (and that seems unlikely given his caged and handcuffed status). Her "yes" answers to decontamination-related questions which were inconsistent with one another similarly fail to support her position. See Hampton, 2011 WL 2565358, at *19 n. 10(similarly disregarding "yes" answers on analogous medical report).

and walked away. These facts, taken as true, sufficiently indicate that Cabral knew of and disregarded a significant risk to Plaintiff's health.

Plaintiff has not, however, raised a genuine issue of material fact as to Escoto or Pascual's Eighth Amendment liability.  Whether either of these defendants even interacted with Plaintiff is disputed; assuming they did, however, Plaintiff's version of the facts does not indicate they were deliberately indifferent.  Plaintiff acknowledges that both Escoto and Pascual gave him a medical call slip when he complained about his symptoms, and that Pascual came back to collect the slip.  Although Plaintiff indicates that his eyes were still swollen and that he was having difficulty seeing, he has not alleged facts indicating that either Escoto or Pascual knew or should have known that he required immediate attention and nonetheless disregarded the risk of not acting more aggressively.  Assuming that the situation *was* an emergency, Escoto or Pascual's failure to recognize it as such constitutes at most negligence, and mere negligence is not actionable under the Eighth Amendment. See Simmons v. Navajo Cty., 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  Similarly, Escoto's failure to collect the medical call slip himself is not evidence of deliberate indifference. Plaintiff has presented no evidence that medical call slips must be collected by the staff member who handed them out, or that he could not have given the slip to another staff person.  Therefore, the court will recommend granting summary judgment for Defendants Escoto and Pascual.

### III.     CONCLUSION AND RECOMMENDATION

The Court finds that Plaintiff has put forth sufficient evidence to raise a triable issue of fact as to whether Defendants Bratton and Cabral were deliberately indifferent.  However, Plaintiff has failed to meet his burden as to Defendants Escoto and Pascual.  Based on the foregoing, the Court HEREBY RECOMMENDS that Defendants' amended motion for summary judgment (ECF No. 55) be DENIED as to Bratton and Cabral; and GRANTED as to Escoto and Pascual.  The Court further finds that Defendants' original motion for summary judgment (ECF No. 54) is moot and superseded as stated by the

amended motion.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen** (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   April 25, 2015          /s/ *Michael J. Seng*
                                 UNITED STATES MAGISTRATE JUDGE

11