UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN R. EDWARDS, | 1:13-cv-00345-EPG-PC |
| Plaintiff, | **PRETRIAL ORDER** |
| vs. | ORDER GRANTING IN PART PLAINTIFF'S MOTIONS FOR ATTENDANCE OF INMATE WITNESSES (ECF Nos. 85, 90.) |
| R. BRATTON and | |
| D. CABRAL, | **Deadline to file Motions in Limine:** March 15, 2016 |
| Defendants. | |
| | **Oppositions to Motions in Limine due:** March 25, 2016 |
| | **Replies to Oppositions to Motions in Limine due:** April 1, 2016 |
| | **Motions in Limine Hearing (Telephonic Hearing):** April 5, 2016 at 10:00 a.m. in Courtroom 10 (EPG) |
| | **Other Pretrial Submissions due:** April 26, 2016 |
| | **Jury Trial:** May 3, 2016, at 8:30 a.m. in Courtroom 10 (EPG) |

This civil rights action, brought pursuant to 42 U.S.C. § 1983, proceeds on the initial Complaint filed *pro se* by state prisoner Steven R. Edwards ("Plaintiff") on March 11, 2013, against defendants R. Bratton (LVN) and D. Cabral (Psychiatric Technician) (collectively,

"Defendants"), for inadequate medical care, in violation of the Eighth Amendment.  (ECF No. 1.)[1]  This case is presently set for trial on May 3, 2016 at 8:30 a.m.

The parties to this action have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (ECF Nos. 77, 83.)  Therefore, Magistrate Judge Erica P. Grosjean shall conduct any and all proceedings in the case, including trial and entry of final judgment.

On October 15, 2015 and December 28, 2015, Plaintiff filed pretrial statements.  (ECF Nos. 87, 91.)  On January 21, 2016, Defendants filed a pretrial statement, and on March 9, 2016 filed an amended pretrial statement.  (ECF Nos. 94, 99.)  Having reviewed the pretrial statements and the remainder of the file, the Court now issues a pretrial order.

On February 18, 2016, a telephonic trial confirmation hearing was held before Magistrate Judge Erica P. Grosjean.  Plaintiff appeared for himself, and defense counsel R. Lawrence Bragg, California Deputy Attorney General, appeared for Defendants.  The Court's rulings at the hearing are reflected in the information below.

## I.   <u>Jurisdiction and Venue</u>

The Court has subject matter jurisdiction over this federal civil rights action.  28 U.S.C. § 1331.  Venue is proper because the conduct allegedly occurred in this judicial district.  There is no dispute as to the Court's jurisdiction or the propriety of venue.

## II.   <u>Jury Trial</u>

All parties request a trial by jury.

///
///
///

---

[1] On June 12, 2013 and June 13, 2013, Plaintiff filed notices to proceed only against defendants Bratton, Cabral, Escorto, and Pascual, for deliberate indifference to his medical needs.  (ECF Nos. 9, 10.)  By this order, all other claims and defendants are hereby dismissed from this action.  Thus, Plaintiff's excessive force claim is dismissed from this action based on Plaintiff's failure to state a claim upon which relief may be granted under § 1983, and defendants George, Simas, and Joslin are dismissed from this action based on Plaintiff's failure to state any claims against them.  On July 17, 2015, summary judgment was granted to defendants Escorto and Pascual.  (ECF No. 73.)  Therefore, this case now proceeds only against defendants Bratton and Cabral for deliberate indifference to Plaintiff's medical needs.

## III.   Facts and Evidentiary Issues

### A.   Defendants' Undisputed Facts

1. Edwards' claims arise out of incidents which occurred when he was incarcerated at Pleasant Valley State Prison (PVSP).

2. Edwards was exposed to pepper spray on his face, chest, and back of his head on July 17, 2012, at approximately 4:25 p.m.

3. Edwards was wearing eyeglasses when the pepper spray initially was applied.

4. After being exposed to pepper spray, Edwards was taken to the Program Office on A Yard and placed in a holding cell.

5. After being placed in a holding cell, Edwards was involved in a second incident involving unidentified correctional officers. Edwards was not exposed to pepper spray during the second incident.

6. After the second incident, Defendant Bratton, a Licensed Vocational Nurse, arrived for the purpose of clearing Edwards for admission to the Administrative Segregation Unit (ASU).

7. On July 17, 2012, the procedure to clear an inmate for admission to the ASU involved performing an examination of the inmate in order to determine whether the inmate required medical treatment on an urgent basis before the inmate was transferred to the ASU, treating any urgent or emergency medical conditions noted during the examination, and notifying a registered nurse or physician of the findings. A CDCR form 7219 Medical Report of Injury or Unusual Occurrence is completed in order to document the examination.

8. Bratton encountered Edwards on July 17, 2012, when he was located in a holding cell in the Program Office on A Yard.

9. Bratton was informed that Edwards had sustained an injury to his shoulder and had been exposed to oleocapsium pepper spray. Bratton

also was informed that Edwards had glaucoma. Bratton was not informed that Edwards had sustained a recent loss of consciousness.

10.   The holding cell where Edwards was located was not equipped with running water.

11.   Bratton had been trained by CDCR that decontamination by air is an appropriate method of addressing exposure to oleocapsicum pepper spray.

12.   Bratton cleared Edwards for admission to the ASU.

13.   Bratton completed a CDCR form 7219 Medical Report of Injury or Unusual Occurrence concerning Edwards.

14.   Edwards provided a video interview on July 17, 2012, between one and one-half and two hours after the incidents involving correctional staff.

15.   Five minutes prior to the interview, Edwards was allowed to decontaminate his eyes by washing his face with water.

16.   After being placed in ASU on July 17, 2012, Edwards had access to a sink and was able to continuously decontaminate his eyes thereafter.

17.   After being placed in ASU, Edwards encountered Defendant Cabral, a Licensed Psychiatric Technician (LPT), on July 18, 2012, at his cell, and requested assistance from her.

18.   In July 2012, Licensed Psychiatric Technicians at PVSP were trained that, if an inmate indicates he needs to see a doctor, nurse, or mental health professional in a non-emergency situation, the LPT should provide the inmate with a CDCR 7362 Health Care Services Request form (7362), which would be evaluated by a nurse to determine if treatment was required. In an emergency situation, the LPT was trained to sound an alarm for other health care personnel to respond.

19.   On July 18, 2012, Edwards was aware that Cabral had a 7362 form on her cart, but did not request to be provided with a 7362 form.

20.     Edwards claims to have encountered Defendant Escoto, an LPT, on July 18, 2012, and that Escoto provided Edwards with a 7362 form.

21.     Edwards did not submit the 7362 form provided to him by Escoto.

22.     Edwards completed a 7362 form on July 19, 2012, which was reviewed on July 21, 2012, at 0830 hours, by a triage nurse, Nursing Supervisor B. Cayen, who scheduled a routine follow up appointment with a physician in ten to fourteen days.

23.     After completing another 7362 form, Edwards was taken to the Correctional Treatment Center on July 21, 2012, and was examined for complaints of blurred vision by Registered Nurse Simas on July 21, 2012, who washed out Edwards' eyes with saline and provided him with a shot of Benadryl.

**B.     Plaintiff's Undisputed Facts**

1.     The Plaintiff's claims arise out of an incident which occurred when he was incarcerated at Pleasant Valley State Prison (PVSP).

2.     The Plaintiff was exposed to pepper spray in his face, chest, and back of head along with being sprayed directly in the eyes when he was sprayed, on July 17, 2012, at approximately 4:25 p.m.

3.     Plaintiff admits to wearing eyeglasses when the incident began, but the first blast of spray knocked them to the floor.

4.     After being pepper sprayed, Plaintiff was taken to the program office on A-yard at PVSP and placed in a holding stand-up cage #4.

5.     Plaintiff was involved in a second incident that involved him being beaten while handcuffed behind the back by officers at PVSP while in cage #4.

6.     Plaintiff admits that Bratton came to the program office of A-yard at PVSP.

///

7.     Defendant Bratton was informed by Plaintiff about his shoulder, eyes being exposed to O.C. pepper spray, being beaten, and having glaucoma, while in cage #4 on July 17, 2012.

8.     Plaintiff also does not dispute that the stand-up cage #4 had no running water.

9.     Plaintiff does not dispute that he provided a video interview on July 17, 2012, between two hours and two hours fifteen minutes, and five to ten minutes before the video interview was allowed to wash his face only and eyes.

10.     Plaintiff did encounter defendant Cabral on July 18, 2012, while housed in Administrative Segregation Unit at PVSP, and asked her to get him a doctor or a nurse, to which she replied "I can't get involved."

11.     Defendant Cabral was pushing a cart that had pills.

12.     Plaintiff agrees that an inmate should be given a 7362 medical sick call slip only in a non-emergency situation such as renewal of medication, a runny nose, bloating, fungus on feet, etc.

13.     Plaintiff filled out a 7362 medical form on July 19, 2012, and was seen in Correctional Treatment Center on July 21, 2012, at about 1:00 p.m.

14.     Plaintiff was taken to the Correctional Treatment Center, and had his eyes flushed with saline for chemical burn to the eyes, and a shot of Benadryl for the swelling and pain.

**C.**     <u>**Defendants' Disputed Factual Issues**</u>

1.     Whether Edwards appeared to Bratton to be extremely angry and agitated, as evidenced by repeated cursing and yelling.

2.     Whether Bratton felt that Edwards posed a threat to her physical safety and did not perform a hands-on examination of Edwards for this reason.

3.     Whether Bratton conducted a visual examination of Edwards while standing two to three feet away, outside the holding cell.

4.      Whether Bratton observed that Edwards was able to move his extremities and appeared to be alert and oriented during a visual examination.

5.      Whether Bratton provided Edwards with instructions on how to decontaminate himself by air with a fan and paper towels.

6.      Whether Bratton observed that Correctional Officer Desfosses had provided Mr. Edwards with a cup of water which Mr. Edwards could utilize for decontamination.

7.      Whether Bratton remained in the area of the holding cell where Edwards was located for approximately ninety minutes and visually checked on his condition at least four times.

8.      Whether Bratton concluded that Edwards had sustained a possible shoulder dislocation, which had been spontaneously reduced back in place, and had been exposed to oleocapsicum pepper spray, but did not detect any significant injuries or bleeding which required immediate medical attention.

9.      Whether Edwards sustained a fracture to his shoulder, and was unable to utilize his shoulder for a brief period of time, approximately a week and a half to two weeks.

10.     Whether Bratton notified Registered Nurse Lewis of her findings on July 17, 2012, with the understanding that Nurse Lewis would ensure that Edwards received any necessary medical care after he was housed in ASU.

11.     Whether Edwards had a serious medical need when he encountered Bratton on July 17, 2012.

12.     Whether Bratton disregarded a risk of harm to Edwards of which Bratton was actually aware when she encountered Edwards on July 17, 2012.

13.     Whether Cabral stated to Edwards on July 18, 2012, that she could not get involved in his request for medical attention.

14.      Whether Cabral provided Edwards with a blank 7362 form on July 18, 2012.

15.      Whether Cabral observed red or swollen eyes, bruises, marks, or knots on Edwards' body during the encounter of July 18, 2012.

16.      Whether Edwards had a serious medical need when he encountered Bratton on July 18, 2012.

17.      Whether Cabral disregarded a risk of harm to Edwards of which Cabral was actually aware when she encountered Edwards on July 18, 2012.

18.      Whether Edwards sustained any significant injury as a result of any delay in irrigating his eyes on July 17, 2012, beyond the initial irritant effect of the spray, which is the intended purpose of administering the spray.

19.      Whether Edwards experienced any chemical burns which scarred his conjunctival membranes, or permanently reduced his tear formation.

20.      Whether Edwards sustained any harm caused by the alleged lack of attention to his eyes by Defendants on July 17 and 18, 2012.

21.      Whether professional medical treatment of Edwards on July 17, 18, or 19, 2012, would have prevented the immediate effects of the pepper spray exposure.

### D.     **Plaintiff's Disputed Factual Issues**

1.      Whether LVN Bratton came to the program office on A-yard at PVSP to clear Plaintiff for A.S.U. on July 17, 2012.

2.      Whether LVN Bratton did a visual examination of the Plaintiff while he was housed in cage #4 in the A-yard program office, and whether Plaintiff heard Bratton and Sgt. Verbeek talking and Sgt. Verbeek telling her Edwards was complaining about his arm, eyes, and being beaten.

3.      Whether Plaintiff did not yell and tell LVN Bratton of his eyes burning, right shoulder, having glaucoma, and not being decontaminated.

4.   Whether defendant Bratton came in the storage room where cage #4 [*sic*], but stood in the hallway by the entrance to the room where cage #4 was located.

5.   Whether Plaintiff was extremely angry, repeatedly cursing.

6.   Whether Plaintiff was in an agitated emotional state to a degree that LVN Bratton feared for her safety at any point, but said, "That's what you get for jumping on an officer."

7.   Whether LVN Bratton stood 2 to 3 feet away from the standing up holding cage, and Plaintiff was moving around in a cage 6 to 7 feet in height and 2 1/2 to 3 1/2 feet wide.

8.   Whether LVN Bratton instructed Plaintiff on how to decontaminate with a fan and paper towels, to air dry decontaminate.

9.   Whether LVN Bratton stayed in the area of where cage #4 was held for ninety minutes, and she did not walk out after the completion 7219 medical report.

10.  Whether LVN Bratton concluded that Plaintiff's possible shoulder dislocation was spontaneously reduced back in place.

11.  Whether Bratton did not contact RN Lewis about her findings, with the understanding that Nurse Lewis would ensure that Edwards got medical attention after housed in A.S.U.

12.  Whether LVN Bratton completed a 7219 medical report on the plaintiff on July 17, 2012.

13.  Whether LVN Bratton did not know that Plaintiff had a serious medical need or was deliberately indifferent to the plaintiff's medical needs.

14.  Whether LPT [Licensed Psychological Technician] Cabral did not observe Plaintiff's red swollen eyes, bruises, marks, and knots on face and body, on July 18, 2012, and said, "I can't get involved."

///

9

15.     Whether Plaintiff was aware at that time that LPT Cabral had medical sick call slip (7362) on the cart she was pushing.

16.     Whether LPT Escorto did not provide him with a 7362 form on July 18, 2012.

17.     Whether Plaintiff did not talk and show his injuries to RN Pascual and receive a 7362 medical form from her and filled it out and returned it to her.

18.     Whether Plaintiff was seen by B. Cayan [or] had his 7362 form review in his presence, at 8:30 a.m. on July 21, 2012.

19.     Whether Pascual did not work on July 21, 2012.

19.[2]   Whether Plaintiff did not sustain significant injuries as a result of a denial and delay on July 17, 18, 19, 20, 21, 2012.

20.     Whether Plaintiff did not have chemical burns to the eyes, or showed significant harm caused by the lack of medical attention to his eyes.

E.      **Defendants' Disputed Evidentiary Issues**

1.      Whether Edwards' felony convictions are admissible to impeach his credibility.

2.      Whether Edwards may testify regarding any matters that call for medical expertise.

3.      Whether Edwards may contradict his prior deposition testimony.

4.      Whether Edwards' testimony in a related case, Edwards v. Desfosses, No. 1:13-cv-01013 SAB (E.D. Cal.), is admissible in this action.

**Discussion:**   At the telephonic hearing on February 18, 2016, the parties discussed Defendants' disputed evidentiary issues above.  The Court advised Defendants to file motions *in limine* addressing the admissibility of medical testimony [Rule 701] and felony convictions [Rule 609].

---

[2] Plaintiff numbered two of his disputed facts #19.  (ECF No. 91 at 6.)

Defendants also questioned whether Plaintiff is permitted to contradict his deposition testimony at trial.  The Court referred the parties to Rule 801(d)(2) and advised that if this issue arises at trial, it can be resolved by impeachment of testimony, and no motion *in limine* is needed on this issue.

With respect to Sergeant Desfosses' past statement, the Court found it inadmissible as hearsay, but that if Desfosses is a witness, Plaintiff can question him.

### F.   <u>Plaintiff's Disputed Evidentiary Issues</u>

The video interview Plaintiff gave on July 17, 2012 in "A"-Yard program office. Plaintiff would like the U.S. District Judge or Magistrate Judge in this matter to encourage Defendants to turn over the original video recording and not the one shown to Plaintiff at the prison which was a copy cut and pasted and missing sections.  Also the papers or documents addressing the lethality of the application of O.C. pepper spray.  Notification of R. N. Lewis who never worked in A.S.U. at Pleasant Valley State Prison.

<u>Discussion:</u>   At the February 18, 2016 hearing, the parties discussed the video evidence.  Plaintiff argued that the video he viewed was not the complete original, stating that Sergeant Mata had made the video.  The Court advised Plaintiff that he may file a motion *in limine* addressing this issue.

Plaintiff asserts that there is also another video, of the prison yard, showing persons entering and leaving the program office.  Plaintiff stated at the February 18, 2016 hearing that he requested this video from Defendants and was told it does not exist.

The Court advised Plaintiff to file a motion *in limine* addressing this issue, but that he must justify why his request for the video was not resolved during discovery.  The Court instructed Defendants to confirm whether the video of the yard is available.

With respect to Plaintiff's request for documents being used by Defendants' expert witness to address the lethality of O.C. pepper spray, the Court held that Defendants have substantially satisfied Rule 26(a)(2)(B)'s requirement of a written report by the submission of Dr. Barnett's declaration at ECF No. 55-8.  However, Defendants were ordered to supplement their disclosure of documents relied upon by their expert and the basics of the expert's

testimony, by March 15, 2016 to be compliant with Rule 26.  Supplementation should include all documents upon which the expert relied in forming his opinion.

Plaintiff requests a Court order requiring submission of a declaration of Registered Nurse Lewis, the nurse who was telephoned by defendant Bratton and asked to review Plaintiff's injuries for clearance for housing in Administrative Segregation.  At the February 18, 2016 hearing, the Court denied the request, referring Plaintiff to Rule 801 of the Federal Rules of Evidence which addresses hearsay.

### G.    Special Factual Information

If presented at trial, Plaintiff requests to make changes or clarification to any undisputed or disputed fact in this matter.

## IV.    Relief Sought

Plaintiff seeks compensatory and punitive damages, injunctive relief, court costs, and attorney's fees.

## V.    Points of Law

This action proceeds only on Plaintiff's § 1983 claim against defendants Bratton and Cabral for inadequate medical care in violation of the Eighth Amendment.  No other claims are at issue.

### A.    Imposition of Liability Under Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing

"under color of state law").  A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"  Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms."  Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743).  This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause."  Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

## B.  Eighth Amendment Medical Claim

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'"  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent."  Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).  Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference."  Id. (citing McGuckin, 974 F.2d at 1060).  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."  Id.  Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate

///

13

indifference to serious medical needs.  McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

 "Deliberate indifference is a high legal standard."  Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'"  Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'"  Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).  "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment."  Id. at 1060.  "[E]ven gross negligence is insufficient to establish a constitutional violation."  Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim."  Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted).  To prevail, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health."  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at 105-06.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin, 974 F.2d at 1050.  Even gross negligence

is insufficient to establish deliberate indifference to serious medical needs.  See Wood, 900 F.2d at 1334. In order to state a claim for violation of the Eighth Amendment, Plaintiff must allege sufficient facts to support a claim that the named defendants "[knew] of and disregard[ed] an excessive risk to [Plaintiff's] health . . ." Farmer, 511 U.S. at 837.

**C.    Damages Issues**

**1.    Nominal Damages**

If the jury finds the plaintiff has proved his claim for violation of his constitutional rights, "nominal damages must be awarded 'as a symbolic vindication of [the plaintiff's] constitutional right' whether or not the constitutional violation causes any actual damage." George v. City of Long Beach, 973 F.2d 706, 708 (9th Cir. 1992) (quoting Floyd v. Laws, 929 F.2d 1390, 1401 (9th Cir. 1991)); Schneider v. County of San Diego, 285 F.3d 784, 794 (9th Cir. 2002).  "If the jury finds a constitutional violation, an award of nominal damages is mandatory, not permissive," Floyd, 929 F.2d at 1402-03, and the amount of actual damages a jury chooses to award, if any at all, is irrelevant to the plaintiff's entitlement to nominal damages,  Schneider, 285 F.3d at 794-95; Floyd at 1402-03.

**2.    Punitive Damages**

Punitive damages are available in section 1983 actions.  Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005) (citations omitted).  "Punitive damages serve to punish the defendant for wrongful conduct and to deter the defendant and others from repeating the wrong."  Id. at 810. The plaintiff has the burden of proving what, if any, punitive damages should be awarded by a preponderance of the evidence, id. at 807, and an award of punitive damages is predicated on the plaintiff proving that the defendant's conduct was malicious, wanton, or oppressive, or in reckless disregard of the plaintiff's rights, Smith v. Wade, 461 U.S. 30, 56 (1986); Dang, 422 F.3d at 807-09.

**3.    Injunctive Relief**

As the events complained of took place at PVSP, and Plaintiff is no longer housed at this institution, Plaintiff's claim for injunctive relief is moot.  Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991).

**D.     Federal Rules of Evidence**

Federal Rule of Evidence 607 provides that the credibility of a witness may be attacked by any party.  But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.  Fed. R. Evid. 608(a).

"For a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant."  Fed. R. Evid. 609(a)(1).  However, under subdivision (b), "[I]f more than 10 years have passed since the witness's conviction or release from confinement for it . . . [e]vidence of the conviction is admissible only if (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use."  Fed. R. Evid. 609(b).

Federal Rule of Evidence 404(b) provides that evidence of prior crimes, wrongs, or acts cannot be used to prove the character of the person in order to show conduct in conformity with that character trait.  Fed. R. Evid. 404(b).  Such prior acts may be admissible for other purposes only, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  Id.

**VI.   Abandoned Issues**

None.

**VII.   Witnesses**

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses.  NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(10).

**A.     Plaintiff's Witnesses**

(a)     Himself, Steven R. Edwards

16

(b)     Hussein Ali, CDCR #G-16259, inmate witness

(c)     Van-Albert Siegrist, CDCR #T-23316, inmate witness

At the February 18, 2016 hearing, the Court granted Plaintiff's motion for the attendance of incarcerated witnesses as to inmates Hussein Ali and Van-Albert Siegrist, but denied Plaintiff's motion as to inmate Thomas Rodney Shade Fouquet.  (ECF Nos. 85, 90.) The Court found that inmates Ali and Siegrist have actual knowledge of relevant facts.  Inmate Fouquet, however, is no longer incarcerated.  Writs of habeas corpus *ad testificandum* shall be issued to transport inmates Ali and Siegrist to the Court for their attendance at trial.

**B.     Defendants' Witnesses**

**(1)     Percipient Witnesses Who Will Testify in Person**

1.     Plaintiff Edwards

2.     Defendant Bratton, Represented by Counsel

3.     Defendant Cabral, Represented by Counsel

4.     Defendant J. Escoto, Represented by Counsel

5.     Defendant M. Pascual, Represented by Counsel

6.     CDCR Correctional Sgt. A. Desfosses, PVSP, Coalinga, CA

7.     CDCR Registered Nurse M. Cabral, PVSP, Coalinga, CA

8.     CDCR Nurse Supervisor B. Cayen, PVSP, Coalinga, CA

9.     CDCR Nurse K. Simas PVSP, Coalinga, CA

10.     Custodian of Records of Edwards' Central and Medical Records

Corcoran State Prison,
900 Quebec Ave.
Corcoran, CA 93212
(559) 992-7100

11.     CDCR Sgt. R. Motta, PVSP, Coalinga, California, for the purpose of authenticating the video interview of Edwards conducted on July 17, 2012.

12.     CDCR Officer D. Deniz, PVSP, Coalinga, California, for the purpose of authenticating the video interview of Edwards conducted on July 17, 2012.

///

13.   CDCR Lt. Burns, PVSP, Coalinga, California, for the purpose of authenticating the video interview of Edwards conducted on August 21, 2012.

14.   CDCR Officer J. Moltano, PVSP, Coalinga, California, for the purpose of authenticating the video interview of Edwards conducted on August 21, 2012.

15.   CDCR Rivera, PVSP, Coalinga, California, for the purpose of authenticating the video interview of Edwards conducted on August 21, 2012.

### (2)   Expert Witnesses Who Will Testify in Person

R. Barnett, M.D., CDCR Chief Medical Officer, Receiver's Office of Legal Affairs, will testify concerning the injuries and treatment provided to Edwards by Defendants at KVSP as documented in the Edwards' medical records.   Dr. Barnett is expected to testify that Edwards did not sustain any significant injury as a result of any delay in irrigating his eyes on July 17, 2012, beyond the initial irritant effect of the spray, which is the intended purpose of administering the spray.   Dr. Barnett will testify that Edwards' medical records do not refer to any chemical burns which scarred his conjunctival membranes, or permanently reduced his tear formation, and that Edwards did not sustain any harm caused by the alleged lack of attention to his eyes by Defendants on July 17, 18, and 19, 2012.   Dr. Barnett will testify that no professional treatment on July 17 or 18, 2012, would have prevented the immediate effects of the pepper spray exposure.   The inflammation in Edwards' eyes noted in subsequent medical examinations was the result of the initial application of the spray and Edwards' frequent washing of his eyes.   In addition, Dr. Barnett may provide opinions to rebut any allegations or evidence as to Edwards' injuries that Edwards and/or his expert witnesses testify to.   The basis for Dr. Barnett's opinion will be a review of Edwards' prison health care records.   Dr. Barnett has not prepared a report but has submitted a Declaration in support of Defendants' Motion for Summary Judgment. (ECF No. 55.)[3]

---

[3]   As discussed above at III(F), the Court held that Defendants have substantially satisfied Rule 26(a)(2)(B)'s requirement of a written report by the submission of Dr. Barnett's declaration at ECF No. 55-8. However, Defendants were ordered to supplement their disclosure of documents relied upon by their expert and the basics of the expert's testimony, by March 15, 2016.

18

Plaintiff was advised by the Court at the hearing on February 18, 2016 that a doctor's out of court statement is hearsay. Plaintiff was also advised that he is permitted to file a motion to bring a doctor as an expert witness for Plaintiff. Any such motion shall brief whether Plaintiff may admit medical records. Plaintiff is also permitted to file a motion to subpoena a doctor. Defendants indicated that they will attempt to locate two doctors who were involved in Plaintiff's treatment, Dr. Berard and Dr. Wilson.

## VIII.   Exhibits

The following is a list of documents or other exhibits that the parties expect to offer at trial. NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 281(b)(11).

At the February 18, 2016, hearing, the Court ordered Defendants to prepare binders containing Defendants' and Plaintiff's trial exhibits, to be used at trial.

### A.   Defendants' Exhibits

Defendants intend to introduce the following exhibits at trial:

a.   Abstract of Judgment representing Edwards' felony conviction(s) and sentence(s);

b.   Abstract(s) of Judgment representing felony conviction(s) and sentence(s) of Edwards' inmate witnesses (if any);

c.   Plaintiff's CDCR chronological movement history;

d.   CDCR Crime/Incident Report PVSP-FAP-12-07-0245;

e.   CDC 7219 form, dated July 17, 2012;

f.   CDC 115 Rules Violation Report 12/FA-07-036;

g.   Videotaped interview of Edwards obtained on July 17, 2012;

h.   Videotaped interview of Edwards obtained on August 21, 2012;

i.   Transcript of Edwards' deposition and Edwards' discovery responses provided in Edwards v. Desfosses, No. 1:13-cv-01013 SAB (E.D. Cal.);

j.    CDCR form 998 concerning Defendant Escoto, dated July 31, 2002;

k.    Relevant portions of Edwards' prison medical records from January 1, 2012, through the present; and

l.    Photographs depicting the holding cell where Edwards was held on July 17, 2012, and the cell in Administrative Segregation at PVSP where Edwards was held on July 17-19, 2012.

Defendants reserve the right to introduce documents not listed above for purposes of impeachment or rebuttal.  Defendants further reserve the right to introduce any documents listed by Edwards.

**B.    Plaintiff's Exhibits**

These are the documents Plaintiff intends to present at trial:

1.    Plaintiff's Deposition, pages 18-25, 42-65, 70-73.

2.    Bratton's Admission statement, pages 4-7, 9-10.

3.    Bratton's Interrogatories, pages 2, 5.

4.    Plaintiff's 7219 Medical report of injuries or unusual occurrences.

5.    Declaration of Hussein Ali.

6.    Declaration of Van-Albert Siegrist.

7.    Declaration of Thomas Rodney Shade Rouquet.

8.    Crime/Incident report, A. Desfosses.

9.    Crime/Incident report, D. Deniz.

10.   Medical Evaluation of Inmate-patient involved in Assaults, cell extraction, or "use of Force."

11.   Oleoresin capsicum contraindications.

12.   Inmate/patients' Rights.

13.   Emergency medical response system.

14.   Mental Health Referral.

15.   Department of Operations Manual (D.O.M.).

16.   General Rules and Responsibilities.

17.     Encounter form:  Eye injury/irritation, pages 1-2.

18.     Letter from Defendants verifying days worked, pages 1-2.

19.     Escorto 998-A.

20.     Medical Report of injury of Unusual Occurrence Form (Policy and Procedure).

21.     Two 7362 health care request forms dated 7/9/12, 8/20/12.

22.     Triage & Treatment Service flow sheet.

23.     Physician Order (2) Two, 7/23/12 & 7/21/12.

24.     Primary Care provider progress notes (2) Two, 7/23/12, 8/21/12.

25.     Ophthalmologist Examination & Physician request for service, ophthalmologic examination, pages 1-2.

26.     Bratton's declaration in support of summary judgment,

27.     D. Cabral's declaration in support of summary judgment.

28.     Escorto's declaration in support of summary judgment, pages 1-2.

29.     M. Pascual's declaration in support of summary judgment, pages 1-3.

30.     Physician request for service, 8/29/12.

31.     B. Barnett, M.D., declaration in support of defendants' motion for summary judgment.

32.     Encounter form: Eye Injury/Irritation, dated 7/24/12.

33.     Health Care Request Form, dated 7/20/12.

34.     Health Care Request Form, dated 7/21/12

35.     Ciprofloxacin ophthalmic patient education.

36.     RN Protocol:  Eye Injury/Irritation, pages 1-4.

If more documents come to light, Plaintiff will submit them to the Court and the Defendants.

///

///

///

**IX.   <u>Discovery Documents To Be Used At Trial</u>**

Defendants respectfully reserve the right to offer Edwards' deposition transcript, or portions thereof, and appended exhibits at the time of trial.  Defendants are not aware of any other discovery documents to be offered at trial.

Plaintiff intends to present these Interrogatories and Admissions Statements, and Deposition listed below:

1.   Plaintiff's Deposition, pages 18-25, 42-65, 70-73.

2.   Bratton's Admissions statement, pages 4-7, 9-10.

3.   Bratton's Interrogatories, pages 2, 5.

4.   A. Desfosses Interrogatories, pages 5-6, 8.

5.   D. Cabral First Set of Interrogatories, page 2, and Second Set of Interrogatories, pages 2-3, 10.

**X.   <u>Further Discovery or Motions</u>**

None.

**XI.   <u>Stipulations</u>**

Defendants stipulate that the parties need not introduce evidence to prove any undisputed facts as set forth above.  Defendants request a stipulation as to the authenticity of Edwards' Prison Central File and Unit Health Record.

At this time Plaintiff has no stipulations.

*CAUTION*:  The parties are cautioned that if any stipulation is obtained in the future, it must be in writing, and must be provided to the Courtroom Clerk no later than **April 26, 2016 at 12:00 p.m. (noon).**

**XII.   <u>Amendments/Dismissals</u>**

Neither party has any amendments or dismissals.

**XIII.   <u>Settlement Negotiations</u>**

Plaintiff has no objections to a settlement negotiation if the defendants are reasonable to the dollar amount and it is a fair opportunity for both Plaintiff and Defendants.

Defendants do not request a court settlement conference under L.R. 270.

**XIV.   <u>Agreed Statement</u>**

Defendants do not believe that presentation of an Agreed Statement of Facts is feasible or advisable given the disputed issues of fact concerning the events of July 17 and 18, 2012.

Plaintiff feels that all statements agreed to should be feasible and presented in this matter so that everyone can have a clear understanding of the facts being agreed to, unless the court deems otherwise.

**XV.   <u>Separate Trial Of Issues</u>**

Defendants request that the trial be bifurcated for punitive damages.  At the February 18, 2016 telephonic hearing, the Court made a tentative ruling to separate the punitive damages phase from the trial.  However, Defendants were advised to bring this issue in a motion *in limine*.  Defendants also indicated they would file a motion *in limine* seeking a protective order limiting evidence of their financial records to the trial phase after punitive damages are found.

Plaintiff feels that if issues that need to be held in a separate trial because both sides are having a difficult time agreeing on what course of action to be taken, then the separate trial on those issues should be feasible, unless the Court deems otherwise.

**XVI.   <u>Impartial Experts - Limitation Of Experts</u>**

Defendants do not request or recommend appointment by the Court of any impartial expert witnesses.  Defendants do not request or recommend any limitations on the number of expert witnesses who may be called to testify in this case.

Plaintiff would request appointment of an expert witness by the Court for trial with no connection to either side.  Defendants have an expert witness and will have the medical opinion of a doctor, but Plaintiff has no means to hire an expert because of his indigent state.  A Court-appointed expert would give the jury the opportunity to hear from someone else in the same field.  Plaintiff agrees that two experts for both sides are enough.

**XVII. <u>Attorney's Fees</u>**

Defendant states that Edwards is not represented by counsel and is not entitled to an award of attorney's fees as a matter of law.

///

Plaintiff is seeking attorney's fees.  Plaintiff has worked on this case and drafted countless motions along with all the copies he had to acquire to put forth this case.  Plaintiff requests that these fees should be included if he is successful at trail, separate from what the jury awards.  If the Court orders a settlement conference, Plaintiff would like attorney's fees as well.

**Discussion**

With regard to attorney's fees, "In any action or proceeding to enforce a provision of section[] 1983 . . . , the court, in its discretion, may allow the prevailing party . . . reasonable attorney's fees . . . . " 42 U.S.C. § 1988(b).  Plaintiff's contention that he is entitled to attorney's fees if he prevails is without merit.  Plaintiff is representing himself in this action, and because Plaintiff is not represented by an attorney, he is not entitled to recover attorney's fees if he prevails.  See Friedman v. Arizona, 912 F.2d 328, 333 n.2 (9th Cir. 1990), superseded by statute as state in Warsoldier v. Woodford, 418 F.3d 989 (9th Cir. 2005); Gonzalez v. Kangas, 814 F.2d 1411, 1412 (9th Cir. 1987); see also Rickley v. Cnty. of Los Angeles, 654 F.3d 950, 954 (9th Cir. 2011) ("The Court accordingly adopted a *per se* rule, categorically precluding an award of attorney's fees under § 1988 to a *pro se* attorney-plaintiff.")

**XVIII. Trial Exhibits**

Defendants state that special handling of Edwards' inmate records may be appropriate as to any confidential sections where disclosure may compromise the safety and security of the institution, staff, or other inmates, or impinge on Edwards' medical privacy.

Plaintiff would like the Court to file his exhibits, because Plaintiff is incarcerated and documents get lost for many reasons that have nothing to do with Plaintiff or his actions.  Plaintiff requests the Court to retain his exhibits until all matters of appeal are exhausted, and when done with everything, destroy all exhibits sent to the Court.  Plaintiff was advised at the February 18, 2016 hearing that his exhibits attached to his pretrial statement filed on December 28, 2015 (ECF No. 91) are filed on the Court's record and will remain part of the record after trial.  Exhibits submitted for trial by the parties are ordinarily returned to the parties after trial.

///

**XIX.  Miscellaneous**

Defendants estimate a three-day jury trial.  Trial may be expedited if Edwards stipulates to the undisputed facts as set forth above and the authenticity of the inmate records identified in Defendants' Pretrial Statement, section J.

Plaintiff requests this matter to be handled swiftly, justly, and effectively, and if any settlement is made, it should be fair to both parties.  Trial should give both parties a fair chance to put forth their cases in the most effective way.  Plaintiff asserts that he followed all Rules to the best of his abilities in preparing his pretrial statement.

**XX.   Claims of Privilege**

Plaintiff has no claims of privilege at this time, and all disclosures have been made by Plaintiff.

**XXI.   Further Trial Preparation**

      **A.        Motions In Limine Hearing and Briefing Schedule**

Any motions *in limine* shall be filed by March 15, 2016.  Any opposition is due by March 25, 2016, and any reply to the opposition is due by April 1, 2016.

The Court will hold a telephonic hearing on April 5, 2016 at 10:00 a.m. to hear the parties' motions *in limine*, in Courtroom 10 before Magistrate Judge Erica P. Grosjean. Counsel for Defendants is required to arrange for Plaintiff's participation in the telephonic hearing and to initiate the telephonic hearing at **(559) 499-5960**.

      **B.        Other**

The parties are relieved of their obligation under Local Rule 285 to file trial briefs.  If they wish to file trial briefs, they must do so on or before **April 26, 2016**.

The Court will prepare the verdict form, which the parties will have the opportunity to review on the morning of trial.  If the parties wish to submit a proposed verdict form for consideration, they must do so on or before **April 26, 2016**.

If Plaintiff wishes to file proposed jury instructions, he must do so on or before **April 26, 2016**.  Defendants shall file proposed jury instructions as provided in Local Rule 163 on or before **April 26, 2016**.  In selecting proposed instructions, the parties shall use Ninth Circuit

Model Civil Jury Instructions to the extent possible.  All jury instructions must be submitted in duplicate: One set will indicate which party proposes the instruction, with each instruction numbered or lettered, and containing citation of supporting authority, and the customary legend, i.e., "Given, Given as Modified, or Refused," showing the Court's action, with regard to each instruction.  One set will be an exact duplicate of the first, except it will not contain any identification of the party offering the instruction or supporting authority or the customary legend of the Court's disposition.  Defendants shall provide the Court with a copy of their proposed jury instructions via e-mail at: **epgorders@caed.uscourts.gov**.

Proposed voir dire questions, if any, shall be filed on or before **April 26, 2016**.  Local Rule 162.1.

The parties may serve and file a non-argumentative, brief statement of the case which is suitable for reading to the jury at the outset of jury selection on or before **April 26, 2016**.  The Court will consider the parties' statements but will draft its own statement.  The parties will be provided with the opportunity to review the Court's prepared statement on the morning of trial.

The **original and four copies** of all trial exhibits along with exhibit lists shall be submitted to Courtroom Deputy Michelle Rooney no later than **April 26, 2016**.  All of Plaintiff's exhibits shall be pre-marked with the prefix "PX" and numbered sequentially beginning with 100 (e.g., PX-100, PX-101, etc.).  All of Defendants' exhibits shall be pre-marked with the prefix "DX" and numbered sequentially beginning with 200 (e.g., DX-200, DX 201, etc.).

If any videotape or DVD will be used for any purpose at trial by any of the parties, the party shall lodge a copy of the videotape or DVD with Courtroom Deputy Michelle Rooney by 4:00 p.m. on **April 26, 2016**.  If a written transcript of audible words on the tape or DVD is available, the Court requests that the transcript be lodged with the Court, solely for the aid of the Court.

If any party intends to use a laptop computer for presentation of evidence or intends to use any other audio/visual equipment belonging to the Court, **that party shall** contact

///

26

Courtroom Deputy Michelle Rooney at least one week prior to trial so that any necessary arrangements and/or training may be scheduled.

**XXII.** **Objections to Pretrial Order**

Any party may, within **ten (10) calendar days** after the date of service of this Order, file and serve written objections to any of the provisions of this Order.  Such objections shall specify the requested modifications, corrections, additions or deletions.

**FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY BE GROUNDS FOR THE IMPOSITION OF SANCTIONS ON ANY AND ALL COUNSEL AS WELL AS ON ANY PARTY WHO CAUSES NON-COMPLIANCE WITH THIS ORDER**

IT IS SO ORDERED.

Dated:   **March 16, 2016**              /s/ _Erica P. Grosjean_

UNITED STATES MAGISTRATE JUDGE